UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORRIS ROBERSON,<br><br>    Plaintiff,<br><br>    v.<br><br>A. GARCIA, et al.,<br><br>    Defendants. | Case No. 16-cv-01087-EMC<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND**<br><br>Docket No. 1, 12 |

## I. INTRODUCTION

Morris Roberson, an inmate at the Kern Valley State Prison, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983. The Court reviewed the complaint, noted that the exhibits referred to in it were missing and some additional information was needed, and required Mr. Roberson to file an amendment. Mr. Roberson then filed an amendment (Docket No. 12) to his complaint. Dockets Nos. 1, 12. The complaint as amended is now before the Court for review under 28 U.S.C. § 1915A.

## II. BACKGROUND

Mr. Roberson asserts claims against four correctional officials for failing to prevent his transfer to another prison. The facts giving rise to his claims are rather involved. The depth with which Mr. Roberson alleged the facts, and his mention of the actions of numerous other correctional officials (in addition to the five named Defendants) causes the Court to question whether Mr. Roberson wants to assert claims against other persons mentioned in the complaint or whether he actually wants to present only claims based on the failure to prevent the transfer to Corcoran.

The complaint and exhibits thereto provide the following information:

A.     Original Rule Violation Report

On April 22, 2012, a riot erupted among a group of inmates on an exercise yard at Salinas Valley State Prison. Mr. Roberson was present but did not participate in the riot.

Mr. Roberson received a rule violation report ("RVR") charging him with participating in the riot. On May 8, 2012, correctional officer A. Garcia was assigned as his investigative employee. Mr. Roberson met with C/O Garcia and asked him to obtain photos of all weapons found, photos of all inmates involved, and camera footage of the event. Mr. Roberson also gave C/O Garcia a list of questions to be asked of all inmates involved in the riot.

A hearing was held on the RVR on June 1, 2012. The hearing officer found Mr. Roberson guilty of the RVR based on an officer's report that Mr. Roberson ran to the scene and started fighting with other inmates. According to the disciplinary report, Mr. Roberson was assessed a 90-day credit forfeiture and was referred to the institutional classification committee for program review and a possible SHU term assessment. Docket No. 12 at 18.

Mr. Roberson had an institutional classification committee ("ICC") hearing on July 19, 2012. Docket No. 12 at 43-44. The form from that hearing contains the following information: First, Mr. Roberson had been placed in administrative segregation on April 22, 2012, in connection with the RVR for participating in a riot, and now had been found guilty of that RVR. Second, the ICC imposed a "5 month aggravated SHU Term with MERD of 08-15-12" for the disciplinary offense of participating in a riot. *Id.* at 43. (MERD means minimum eligible release date, i.e., the date the SHU term would end.) Third, the ICC decided to refer Mr. Roberson for consideration of whether he also should get an indeterminate SHU placement for repeated misconduct. The ICC report states that, because Mr. Roberson had accumulated two RVRs for participating in two different riots (i.e., the current RVR for the April 22, 2012 riot and an earlier RVR for a January 20, 2011 riot), the committee "determined that his behavior clearly demonstrates a propensity for Violence and disruptive behavior which endangers the safety of others, as well as the security of the institution. Therefore, ICC elects to refer the case to the CSR [i.e., classification staff representative] for SHU audit and recommend transfer" to the SHU at

Corcoran State Prison or the SHU at CCI-Tehachapi on an indeterminate basis "upon completion of active MERD 8-15-12." *Id.* The upshot of the ICC's decision-making was that Mr. Roberson would spend at least five months in the SHU and was being put up for consideration to be kept in the SHU indefinitely.

Mr. Roberson filed an inmate appeal, challenging the June 1, 2012 disciplinary decision on the RVR for participating in a riot. On August 3, 2012, the chief deputy warden granted some relief. The chief deputy warden determined that there was a procedural deficiency in the proceedings in that the hearing officer did not address Mr. Roberson's request for evidence mentioned in the investigative employee's report. In the inmate appeal response attached to the complaint, the chief deputy warden "partially granted" the inmate appeal and wrote:

> [T]he appellant's request for dismissal of the RVR is partially granted; the RVR will be ordered Reissue/Rehear by the Chief Disciplinary Officer (CDO). The appellant's request for release from Administrative Segregation Unit (ASU) must be appealed separately; this appeal (SVSP-L-12-02845) is only addressing the due process/procedural requirements of the RVR. The appellant's request for reversal of the Security Housing Unit (SHU) term is partially granted; after reissue/rehear of the RVR by the CDO, the SHU term assessed for FC12-04-0048 will be vacated.

Docket No. 12 at 27.

Chief disciplinary officer McCall then issued an order for the RVR to be reissued and a new hearing to be held. Docket No. 1 at 5; Docket No. 12 at 29.

B.      The Proceedings on the Re-Issued Rule Violation Report

A new RVR was issued. C/O Navarro was assigned as the investigative employee for the new hearing. Mr. Roberson met with Navarro on August 26, 2012 and gave C/O Navarro a list of new questions to be asked of several inmates. C/O Navarro submitted his investigative employee's report, which included a list of questions for eight different inmates Mr. Roberson wanted questioned and the inmates' responses to those questions. Docket No. 12 at 31-33. Each of the inmate-witnesses gave responses that he did not fight with Mr. Roberson, he did not see anyone else fighting with Mr. Roberson, and he could safely be on the same yard as Mr. Roberson. *See id*.

On September 6, 2012, a re-hearing was held, at which Mr. Roberson was once again

found guilty of participating in the riot on April 22, 2012. He was assessed a forfeiture of 90 days of time credits. Docket No. 12 at 39. In addition to the time-credit forfeiture, "the sentence was reinstated to Corcoran SHU." Docket No. 1 at 5. Mr. Roberson alleges that he requested photos of all weapons found, all inmates involved, and camera footage if any existed. The SHO denied the request because the weapons evidence was irrelevant because Mr. Roberson was not charged with any weapons-related offenses. Docket No. 1 at 5-6. There was no footage of the incident because the camera system was not working. *Id*. at 6. The hearing officer's report also stated that photos of the involved inmates would not be material to the hearing because Mr. Roberson had been identified by name in the reporting official in the RVR. Docket No. 12 at 41.

Mr. Roberson was not referred back to a new classification for a new SHU determination after the RVR was reheard, as he contends was required by a state regulation. Docket No. 1 at 7. He contends that this made his confinement in administrative segregation unlawful.

C.    The Defendants Fail To Stop Mr. Roberson's Transfer

All of the foregoing allegations and recitations are merely background information for Mr. Roberson's claims in this action. His claims are based on the failure of four correctional staff members to prevent his transfer to the Corcoran SHU.

After the second RVR hearing resulted in Mr. Roberson being found guilty, Mr. Roberson remained in administrative segregation. Mr. Roberson spoke with defendant sergeant Lopez on a couple of occasions while in administrative segregation. Sergeant Lopez "assured plaintiff that he was going to take plaintiff to classification after reading the memorandum order to vacate the June 1, 2012 guilty finding." Docket No. 1 at 7. CCII Hughes also "assured plaintiff that he would take plaintiff to classification to vacate the June 1, 2012 guilty findings." *Id.* But Mr. Roberson was not taken to a classification hearing.

On September 10, 2012, CCI Garcia, a staff member in the administrative segregation unit, told Mr. Roberson he was on the transfer list to the Corcoran SHU. Docket No. 1 at 8. Mr. Roberson asked CCI Garcia "to call the appeals office to see why the transfer had not been cancelled" because Mr. Roberson believed the appeal response had vacated the transfer order. *Id.* (The appeal response had not mentioned any transfer order.)

4

"Officer Lopez told lieutenant McDonald that plaintiff would not be transferred but never acted to stop the transfer." *Id.*

"On September 11, 2012, prison officials removed plaintiff from administrative segregation at Salinas Valley State Prison, and placed plaintiff in administrative segregation in Corcoran-SHU after a disciplinary rehearing rule violation report issued by prison personnel." *Id.* Mr. Roberson contends that, when the RVR was ordered re-heard, all dispositions, including a SHU term, were voided pursuant to provisions in the California Department of Corrections and Rehabilitation Operating Manual. Therefore, he contends, he should not have been transferred to the Corcoran SHU.

Mr. Roberson contends that defendants violated his Eighth and Fourteenth Amendment rights "when they allowed plaintiff's transfer to Corcoran Security Housing (Corcoran SHU) after plaintiff's successful appeal, which ordered the reissue and rehearing of the rule violation report at issue in this case." *Id.* at 11. He further contends that the conditions were harsh at the Corcoran SHU, and amounted to an atypical and significant hardship in relation to the ordinary incidents of prison life.

### III.   DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

A.   Eighth Amendment

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Deliberate indifference to an inmate's health or safety may violate the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer*, 511 U.S. at 834. Merely negligent conduct does not violate the Eighth Amendment. *Id.* at 835-36.

Mr. Roberson alleges that four correctional officials violated his Eighth Amendment rights by letting him be transferred to the Corcoran SHU. But those defendants worked at Salinas Valley and are not alleged to have controlled the conditions at Corcoran. It would relax the causation element necessary for a § 1983 violation too far to hold that a prison official at one prison could be liable for conditions at another prison simply because that prison officials allowed the inmate to be transferred to the second prison. Moreover, the complaint fails to allege facts suggesting that any of those defendants at Salinas Valley acted with the requisite mental state of deliberate indifference. A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *See id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See id.*

As it cannot be said with certainty that amendment would be futile, leave to amend is granted so that Mr. Roberson may attempt to plead facts showing both the subjective and objective prongs of an Eighth Amendment claim based on the defendants' failure to prevent his transfer to Corcoran.

B.   Due Process

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of

6

1  law.  Interests that are procedurally protected by the Due Process Clause may arise from two
2  sources: the Due Process Clause itself and laws of the states.  *See Meachum v. Fano*, 427 U.S.
3  215, 223-27 (1976).  In the prison context, these interests are generally ones pertaining to liberty.
4  Changes in conditions so severe as to affect the sentence imposed in an unexpected manner
5  implicate the Due Process Clause itself, whether or not they are authorized by state law.  *See*
6  *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980)
7  (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary
8  administration of psychotropic drugs)).  Deprivations that are less severe or more closely related to
9  the expected terms of confinement may also amount to deprivations of a procedurally protected
10 liberty interest, provided that the liberty in question is one of "real substance."  *See Sandin*, 515
11 U.S. at 477-87.  An interest of "real substance" will generally be limited to freedom from restraint
12 that imposes an "atypical and significant hardship on the inmate in relation to the ordinary
13 incidents of prison life" or "will inevitably affect the duration of [a] sentence."  *Id.* at 484, 487.
14     Mr. Roberson's contention that he had a right to due process in connection with the
15 decision to transfer him from the administrative segregation in the SHU at Salinas Valley to
16 administrative segregation in the SHU at Corcoran fails to state a claim as pled.  In general, the
17 transfer of an inmate from one prison to another does not implicate the federal right to due
18 process.  The liberty in question generally is not protected by the Due Process Clause because the
19 deprivation of a correct classification or custody designation cannot be characterized as one of
20 "real substance," i.e., it does not impose "atypical and significant hardship on the inmate in
21 relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, or "inevitably affect the
22 duration of [a] sentence," *id.* at 487.  And the changes in conditions relating to classification and
23 reclassification do not implicate the Due Process Clause itself.  *See Hernandez v. Johnston*, 833
24 F.2d 1316, 1318 (9th Cir. 1987) (citing *Moody v. Dagget*, 429 U.S. 78, 88 n.9 (1976)) (no
25 constitutional right to particular classification).  Prisoners also have no constitutional right to
26 incarceration in a particular institution.  *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983);
27 *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  Mr. Roberson had no due process right not to be
28 transferred from administrative segregation in one prison to administrative segregation in another

7

prison, assuming the conditions were roughly similar. He fails to state a claim against the defendants for failing to prevent his transfer to Corcoran. However, an inmate may have a right to due process in connection with a transfer from one administrative segregation unit to another if the conditions at the second prison's administrative segregation unit were so dramatically worse than the conditions at the first prison's administrative segregation unit that the change amounted to the imposition of an "atypical and significant hardship," *Sandin*, 515 U.S. at 486. If Mr. Roberson wishes to assert such a claim, he needs to allege specific facts showing that administrative segregation at the Corcoran SHU was so much worse than the administrative segregation at the Salinas Valley SHU that the transfer amounted to the imposition of an atypical and significant hardship. He also needs to link appropriate defendants to such a claim by alleging what each defendant did or failed to do that caused his transfer.

Insofar as Mr. Roberson is attempting to hold the named defendants liable for the alleged problems at the earlier disciplinary hearing, or the earlier ICC hearing, he fails to show that the named defendants took part in either of those decisions. The complaint does not state a claim against the named defendants for any alleged problems at those hearings.

If Mr. Roberson wants to assert a claim that he was entitled to a second ICC hearing before leaving Salinas Valley, he should so allege in his amended complaint and must take particular care to link one or more defendants to such a claim, by alleging what each defendant did or failed to do that caused him not to receive a second ICC hearing. In his amended complaint, Mr. Roberson also must clarify what hearings and other procedures were used to determine his placement in the time he was at the Corcoran SHU. It is especially important that he describe each and every procedure or hearing that was used in the first three months after his arrival at Corcoran.

If Mr. Roberson wants to allege a claim against one or more other officials for due process violations in connection with the disciplinary hearing or the ICC hearing, he should name such persons in his amended complaint and explain what each of those defendants did or failed to do that caused a violation of his constitutional rights. For his reference, the Court will set out the procedural protections required when there is a federally protected liberty interest.

Administrative Segregation: When prison officials initially determine whether a prisoner

8

is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that prison officials hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*, 515 U.S. 472. Due process also requires that there be some evidence to support the prison officials' decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Toussaint*, 801 F.2d at 1104-05.

Disciplinary decisions: An inmate in California is entitled to due process before being disciplined when the discipline results in the deprivation of a liberty interest of real substance. *See Sandin*, 515 U.S. at 484, 487. The process due in such a prison disciplinary proceeding includes written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974). Due process also requires that there be "some evidence" to support the disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

Finally, the Court notes that Mr. Roberson named five defendants, *see* Docket No. 1 at 10, but makes no allegations against the defendant correctional lieutenant Moffet. Mr. Roberson should dismiss this defendant or include allegations against him/her in his amended complaint.

## IV.   CONCLUSION

The complaint is dismissed with leave to amend. Mr. Roberson must file an amended complaint that complies with the directions in this order no later than **January 31, 2017**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Mr. Roberson is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for

9

any claims voluntarily dismissed, we will consider those claims to be waived if not repled.")
Failure to file the amended complaint will result in the dismissal of this action.

**IT IS SO ORDERED**.

Dated: January 10, 2017

_____
EDWARD M. CHEN
United States District Judge

10