UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORRIS ROBERSON,<br><br>Plaintiff,<br><br>v.<br><br>A. GARCIA, et al.,<br><br>Defendants. | Case No. 16-cv-01087-EMC<br><br>**ORDER OF SERVICE**<br><br>Docket No. 16 |

## I. INTRODUCTION

Morris Roberson, an inmate at the Kern Valley State Prison, filed this *pro se* prisoner's civil rights action seeking relief under 42 U.S.C. § 1983. His amended complaint (Docket No. 16) is now before the Court for review under 28 U.S.C. § 1915A.

## II. BACKGROUND

In his amended complaint, Mr. Roberson alleges the following:

Mr. Roberson received a rule violation report (RVR) for participating in a riot on April 22, 2012. He was not guilty of the infraction, and maintained his innocence in the disciplinary proceedings.

A disciplinary hearing was held on June 1, 2012, at which Mr. Roberson was found guilty. He was assessed a 90-day credit forfeiture and was referred to the institutional classification committee (ICC) for review and a possible security housing unit (SHU) term assessment. At the ICC hearing on July 19, 2012, the ICC imposed a 5-month SHU term for the April 22, 2012 riot, *plus* an indeterminate SHU term (with a recommendation that Mr. Roberson be transferred to the SHU at Corcoran or the SHU at CCI-Tehachapi) because he had received more than one RVR for misconduct of a similar nature, i.e., the RVR for the April 22, 2012 riot, and an RVR for

participating in another riot on January 20, 2011. (Docket No. 16 at 7; Docket No. 16-3 at 47-48.)

Mr. Roberson appealed the disciplinary decision on the RVR for the April 22, 2012 riot. His appeal was granted in part and the original RVR was vacated with directions to re-issue and re-hear the RVR. The decision on his inmate appeal did not vacate or otherwise undo the indeterminate SHU term that already had been assessed. The inmate appeal was decided on July 19, but Mr. Roberson did not receive the decision until August 6, 2012. Mr. Roberson asked, and was told by a correctional counselor that "most likely" Mr. Roberson would be issued a new administrative segregation placement notice (also known as a CDCR-114D) and a new ICC hearing as a result of the administrative appeal decision. (Docket No. 16 at 8.)

Meanwhile, Mr. Roberson was "endorsed" to the Corcoran SHU on July 30, 2012, "because no one knew that [he] was going to be successful on the appeal . . . and [that the original RVR] would be vacated." (*Id.*) Mr. Morris had not yet received a new CDCR-114D administrative segregation placement notice or a new ICC hearing after the original RVR was vacated.

The RVR for the April 22, 2012 riot was re-issued on August 14, 2012. Mr. Roberson was found guilty on the re-issued RVR at a hearing on September 6, 2012. (*Id.* at 9-11.)

After learning that he was scheduled to be transferred to the Corcoran SHU, Mr. Roberson asked several correctional staff members at Salinas Valley to prevent his transfer. Defendants Garcia, Hughes and Lopez failed to prevent his transfer, although Mr. Roberson had alerted them to his problem, i.e., that he was being transferred for a SHU term that should have been vacated when the original RVR for the April 22, 2012 riot was vacated.

Mr. Roberson arrived at the Corcoran SHU in September 2012, and had his initial SHU review on September 19, 2012, before an ICC at that facility. Mr. Roberson explained that his placement was incorrect because the original RVR for the April 22, 2012 riot had been vacated. The ICC hearing concluded with committee member Mascarenas stating that she would look into the matter and with Mr. Roberson remaining in the SHU. At an ICC hearing on October 31, 2012, committee member Mascarenas stated that the ICC would vacate the SHU term that had been imposed on July 19, 2012 for the original RVR, and refer the case to a CSR for a proposed 6-

month SHU term for the re-issued RVR. Mr. Roberson tried to talk to CDW Sandor at the ICC about the modification order but CDW Sandor refused to listen to him and made him leave the ICC hearing. On or about October 31, 2012 or December 5, 2012, the ICC determined that earlier concerns had been addressed and that the corrected indeterminate SHU term remained appropriate.

The Corcoran SHU was significantly more restrictive than Mr. Roberson's administrative segregation housing at Salinas Valley. (*Id.* at 20.) While at the Corcoran SHU, the conditions he experienced included the following: he was unable to visit with friends and family members; some of his property was confiscated, destroyed or restricted; some unidentified medical treatment was denied; he was unable to attend church, school or work; and he contracted hepatitis A and B from the barber clippers he used to cut his hair. (*Id.*)

Mr. Roberson filed several inmate appeals about several different decisions. His inmate appeals were unsuccessful.

### III. DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Administrative segregation: When prison officials initially determine whether a prisoner is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that prison officials hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or

3

the reasons segregation is being considered, and allow the prisoner to present his views. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). Due process also requires that there be some evidence to support the prison officials' decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Toussaint*, 801 F.2d at 1104-05.

Mr. Roberson alleges that, when he was first put in administrative segregation on April 23, 2012, chief deputy warden (CDW) Soto did a 72-hour review at which CDW Soto told Mr. Roberson that he could not call witnesses at that time but could call witnesses later at the disciplinary hearing on the RVR. (Docket No. 16 at 5.) The disallowance of witnesses at the administrative segregation placement review did not violate Mr. Roberson's right to due process because allowance of witnesses is not one of the procedural protections required for administrative segregation placement. *See Toussaint*, 801 F.2d at 1100-01 ("We specifically find that the due process clause does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation.") This claim is dismissed without leave to amend.

<u>Failure to prevent continued SHU stay</u>: The heart of this action are the allegations that several corrections officials failed to undo the discipline after Mr. Roberson alerted them that the decision finding Mr. Roberson guilty had been set aside. Although uncommon, it is not unheard of to hold a prison official responsible for an ongoing constitutional violation he is made aware of and has the power to address, yet fails to act to address the problem. *See generally Jett v. Penner*, 439 F.3d 1091, 1096-97 (9th Cir. 2006) (triable issue existed as to warden's liability for inadequately medical care provided to inmate when warden denied receiving letter that inmate claimed to have sent to the warden requesting help for ongoing and unmet medical need). "A wrongful detention can ripen into a due process violation if 'it was or should have been known [by the defendant] that the [plaintiff] was entitled to release.'" *Gant v. County of Los Angeles*, 772 F.3d 608, 620 (9th Cir. 2014); *see e.g., id.* at 622-23 (arrestee detained on a warrant meant for another man with same name plausibly alleged a due process violation by County which should

4

have known he was not the person for whom warrant was intended); *Garcia v. County of Riverside*, 817 F.3d 635, 640 (9th Cir. 2016) (allowing due process claim for excessive detention based on law enforcement's failure to investigate an arrestee's claim of mistaken identity).

Mr. Roberson alleges that some Defendants failed to prevent his transfer to the Corcoran SHU where he would have to serve the SHU term that should have been vacated when the underlying disciplinary decision was set aside, and some other Defendants at the Corcoran SHU failed to release him from the SHU when he alerted them that his SHU term should have been vacated when the underlying disciplinary decision was set aside. Giving the *pro se* amended complaint the liberal construction to which it is entitled, a cognizable due process claim is stated against sergeant Lopez, correctional counsel Hughes, and correctional counselor Garcia for failing to take steps to prevent Mr. Roberson's transfer to the Corcoran SHU after he alerted them that the SHU term was premised on a disciplinary decision that had been set aside. A cognizable due process claim also is stated against correctional counselor Mascarenas and CDW Sandor at Corcoran State Prison for failing to release Mr. Roberson from the SHU once he alerted them to the fact that the SHU term he was sent to serve was premised on a disciplinary decision that had been set aside.[1]

A claim is not, however, stated on the same theory against senior hearing officer Moffett and chief disciplinary officer McCall, who allegedly "had the power to correct the violation and duty to act," because no facts are alleged that either of them was aware of or should have known that Mr. Roberson remained in disciplinary housing when he allegedly was entitled to release. (Docket No. 16 at 12, 13.) Indeed, the allegations of the amended complaint suggest that – other than Lopez, Hughes, Garcia, Mascarenas, and Sandor, who Mr. Roberson told about the problem – the SHU term error was not known to prison officials because the decision on the administrative appeal did not mention that the SHU term should be vacated.

Disciplinary decisions: An inmate in California is entitled to due process before being disciplined when the discipline results in the deprivation of a liberty interest of real substance. *See*

---

[1] The SHU term for the guilty finding of September 6, 2012 was not imposed until October 31 or later.

5

*Sandin*, 515 U.S. at 484, 487. The process due in such a prison disciplinary proceeding includes written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974). Due process also requires that there be "some evidence" to support the disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

Liberally construed, the amended complaint states a cognizable due process claim against senior hearing officer Moffett, who conducted the hearing for the re-issued RVR. The amended complaint also alleges that Mr. Roberson was not guilty of participating in a riot on April 22, 2012. Liberally construed, this allegation appears to be an indirect way of alleging that there was not some evidence to support the disciplinary decision.

Administrative appeals: There is no federal constitutional right to a prison administrative appeal or grievance system for California inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause); *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993). Prison officials are not liable for a due process violation for simply failing to process an appeal properly or failing to find in Mr. Roberson's favor.

Mr. Roberson alleges that CDW Soto failed to accurately describe and fully address the relief to be granted when he responded to Mr. Roberson's inmate appeal from the original RVR. (Docket No. 16 at 12, 13, 18.) Mr. Roberson also alleges that G. Mascarenas, correctional officer Hayward, and appeals coordinator Pana mishandled Mr. Roberson's inmate appeals at Corcoran State Prison. (*Id.* at 16-18.) These instances of alleged misconduct do not give rise to any Fourteenth Amendment liability because, even assuming the appeals were mishandled or the decisions were incomplete, Mr. Roberson had no constitutionally-protected right to have his administrative appeals handled and decided correctly. These claims are dismissed without leave to

amend.[2]

Eighth Amendment claim: Deliberate indifference to an inmate's health or safety may violate the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Merely negligent conduct does not violate the Eighth Amendment. *Id.* at 835-36.

Mr. Roberson alleges that Defendants' conduct violated his Eighth Amendment rights in addition to his due process rights because they allowed him to go to the Corcoran SHU where the conditions were significantly more restrictive than at Salinas Valley. A claim is not stated for an Eighth Amendment violation based on the conditions and events experienced during his time at the Corcoran SHU.

Some of the other incidents of life at the Corcoran SHU that might inevitably accompany SHU placement, such as restrictions on property, visitation and movement, were not sufficiently serious to satisfy the objective prong of an Eighth Amendment violation. A term in segregated housing, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *See Anderson v. County of Kern*, 45 F.3d 1310, 1315-16 (9th Cir. 1995) (no contact with any other inmate in administrative segregation, either for exercise, day room access or otherwise not cruel and unusual punishment); *Toussaint v. Yockey*, 722 F.2d 1490, 1494 n.6 (9th

---

[2] Mr. Roberson also alleges that CDW Soto was "legally responsible for the overall operation of" Salinas Valley State Prison. (Docket No. 16 at 2.) There is no respondeat superior liability under § 1983, i.e. no liability under the theory that a defendant is liable simply because he, she, or it employs a person who has violated a plaintiff's rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). CDW Soto is not liable under § 1983 based on his or her overall responsibility for operations of the institution at which the alleged wrongdoing occurred. A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Here, the amended complaint does not allege facts supporting supervisorial liability for CDW Soto, i.e., the amended complaint does not allege that CDW Soto was personally involved in the constitutional violation or a sufficient causal connection between wrongful conduct by him or her and a constitutional violation.

7

Cir. 1984) (more than usual hardships associated with administrative segregation required to state 8th Amendment claim); *cf. Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.")

Other conditions or events that would be sufficiently serious to satisfy the Eighth Amendment's objective prong were not conditions or events that were part of the disciplinary sentence. For example, Mr. Roberson alleges that he contracted hepatitis at the Corcoran SHU while using barber clippers to cut his hair and had some unidentified unmet medical need. But Defendants did not impose (or allow to stand) discipline that required Mr. Roberson to contract hepatitis or that required him to receive inadequate medical treatment -- those things merely happened during his stay in disciplinary housing. Not surprisingly, he does not allege facts suggesting that any Defendant acted with the requisite mental state of deliberate indifference to these events that allegedly occurred in the SHU to which the Defendants sent Mr. Roberson.

The order of dismissal with leave to amend had explained the need to allege facts showing both the subjective and objective prongs of an Eighth Amendment claim. (Docket No. 13 at 6.) The amended complaint fails to include such allegations and therefore does not state an Eighth Amendment claim. Further leave to amend will not be granted because it would be futile; the Court already explained what needed to be pled and Mr. Roberson was unable to plead such facts. (Of course, Mr. Roberson remains free to challenge the conditions of confinement in the Corcoran SHU that may arise that violate his Eighth Amendment or other constitutional rights. He should file any such complaint in the Eastern District of California, as that is the proper venue for a civil rights action about conditions at Corcoran State Prison.)

### IV. CONCLUSION

1. The amended complaint states cognizable due process claims against Defendants Lopez, Hughes, Garcia, Moffett, Mascarenas, and Sandor. The Eighth Amendment claim and Defendants Soto, McCall, Hayward, and Pana are dismissed from this action.

2. The Clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the amended complaint and a copy of all the

8

documents in the case file upon the following defendants:

- sergeant Lopez (at Salinas Valley State Prison)
- correctional counselor II Hughes (at Salinas Valley State Prison)
- senior hearing officer Moffett (at Salinas Valley State Prison)
- correctional counselor I Garcia (at Salinas Valley State Prison)
- G. Mascarenas (at Corcoran State Prison)
- chief deputy warden G. Sandor (at Corcoran State Prison)

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

    a. No later than **September 15, 2017**, Defendants must file and serve a motion for summary judgment or other dispositive motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the court prior to the date the motion is due. If Defendants file a motion for summary judgment, Defendants must provide to plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

    b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **October 13, 2017**. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

    c. If defendants wish to file a reply brief, the reply brief must be filed and served no later than **October 27, 2017**.

4. Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in

9

> declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If a defendant files a motion for summary judgment for failure to exhaust administrative remedies, he is seeking to have the case dismissed. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, Plaintiff's case will be dismissed and there will be no trial.

5. All communications by Plaintiff with the Court must be served on a Defendant's counsel by mailing a true copy of the document to the Defendant's counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until a Defendant's counsel has been designated, Plaintiff may mail a true copy of the document directly to the Defendant, but once a Defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that Defendant.

6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

**IT IS SO ORDERED**.

Dated: July 6, 2017

_____
EDWARD M. CHEN
United States District Judge